Call the last case on the docket for this week for this panel, Linda Singletary v. United Parcel Service et al. Your Honors, may it please the Court, my name is Joseph Piasson and I represent the appellant in this matter, Ms. Linda Singletary. Your Honors, this case arises from the denial of a group life insurance claim made by my client arising from the death of her husband, Mr. Timothy Singletary. And that claim was denied based on sole reason of his enlisted status at the time of his death. He was enlisted in the U.S. Army stationed stateside in Texas at the time of his death. Let me ask you this because it seems that your case hinges largely on the lack of notice to Ms. Singletary of this exclusion. And so you cite to Louisiana and Georgia, whatever, if we conclude that federal law trumps everybody else on this question, what cases, and I know the statute says you should give notice of the terms and so on, I got that. What case do you have that says the absence of giving notice of a particular exclusion vitiates the exclusion? I think that's best answered in this way, starting off with the statute that I'm suing under. This is a claim for benefits under 1132A1B, which is exactly what I've alleged all along. That's the vehicle that gets me in here. We are seeking benefits that are due under this group life insurance policy, supplemental benefits to be specifically based on the death of Mr. Singletary. Now, that's the simple part. The more complicated part is interpreting the policy to determine whether or not the exclusions and the eligibility provisions can be enforced and more specifically whether they apply here. I turn no further than to the certificate itself, which says one of the theories raised by the defense is that Georgia law should apply here, and that's provided for in the certificate itself. Georgia law is the same as Louisiana law, which says that absent delivery of the certificate, the insurer is precluded from relying on any exclusions in that certificate. This isn't some novel theory. Okay, but I asked a super specific question that you're kind of drifting from. I want to focus on federal ERISA law. If we just said no Georgia, no Louisiana, just federal ERISA law, you've cited a statute to us that says you're supposed to give notice of these terms and conditions and so forth. Appreciate that. Are there any cases under federal ERISA law that says the failure to do so therefore vitiates reliance on an exclusion? Judge, I have searched high and low, and I'm sure my opponents have searched high and low for a case that would fit the parameters of this case that says here if there was no disclosure or notification, perhaps is the best word, of the exclusion, or even a better word, eligibility provisions here for my client's husband, whether you can then borrow from the state law on that. Specifically, I can't cite to you a case on all fours with this case. What I can do is go back to, for example, the Amara case, which goes and says you can look to state law to fill in the gaps for purposes of interpreting insurance policies where state law applies. UDMV Ward did the same thing with the notice prejudice rule, which is what Amara relied on. There is always going to be some interplay between ERISA and state law where it applies, as here, because we're dealing with a group insurance policy. So the answer is no, but you think state law can fill in a gap? I think state law fills in the gap both under ERISA for the savings clause and, even better, under the group policy itself, which says it is to be construed under the laws of the state of Georgia if we were to accept that Georgia law were to apply. So that's my best evidence how we get to state law here. Did Mrs. Singletary fill out an application? She did, for her husband, for the coverage for her husband. I have every reason to believe that she did, yes. Well, it's not in the record. What, I gather, because I would be curious whether that application asked for what he was doing for his day job. Fair enough, and I can answer that this way. Again, this being an ERISA case, we're all bound and construed by the contents of the administrative record. I have no discovery. I can't go issue subpoenas to anyone. I can't take depositions of anyone at Prudential or UPS. We're bound by the contents of the administrative record, which was prepared by the defendants. In that administrative record, there is a detailed course of correspondence and communication between my client and UPS and Prudential. In there, there is the eligibility application section of the documentation going back and forth. There are two separate letters verifying Mr. Singletary's eligibility for benefits under supplemental life insurance. It was a letter dated July of 2012, I think barely three months before he passed, in there. What they relied on to verify his eligibility, what facts went back and forth, it's not in the administrative record. And his status didn't change. His active duty status didn't change. In other words, he wasn't suddenly on active duty after July of 2012. To the best of my knowledge and understanding, the evidence is that he was in the armed services the entire time. The whole time. Okay. And that has, I think, been a fact. So we're in a situation where he never had, where this insurance never existed. Under the, where we find ourselves right now, the decision taken by the defense is that this was insurance that my client paid for. Paid for. And they've kept the premiums, right? They've never rebated the premiums. That's correct. Okay. So they've kept the premiums for a guy they say was never insurable, never qualified as a qualified dependent because he was on active duty. That's correct. Okay. Now, it seems to me that there is a big dichotomy between the two of you on whether Mrs. Singletary was on notice of this. And I'm wondering if I've solved the mystery. So this is going to be a long question, but it's going somewhere. So I apologize because I realize it's kind of a long speech. But there is a section at Record 752 that is the exclusions and limitations that UPS relied upon in denying the claim, which is no benefits are payable, oh, I'm sorry, that's the disability. But before that, what they're relying on is the statement that there are no benefits payable for any, you're not a qualified defendant if you are on active duty, period. That's what they relied on. He's on active duty. You're not a qualified defendant. There is also a section, and this is at 731, that an accident, a loss that results from an accident occurring while serving on full-time active duty is excluded, which to me those are two different provisions. One of them is you're never covered because you're on active duty, regardless of the cause of your death. Any cause of death whatsoever would disqualify you. That's what they found him ineligible based on. This other one sounds more causal, like while serving, we could get into while serving and all of that. That your client seemed to have had notice of. So is that the dichotomy, that your client had notice of the loss while serving, you know, an accident while serving, which sounds active, but did it have notice of you are not a qualified defendant if you are on active duty? Well, Judge, it deals with two different benefits. An accidental death benefit is a different benefit from a supplemental life insurance benefit, which is not contingent upon there being an accident. And, in fact, I can see reasons for having that in there having to do with the accident. And it's a different benefit from dental for health, so on and so forth. Okay. I'm not being clear. But I am interested in what you're saying. Go ahead and finish, but that's not my question. Okay. I guess what I'm getting at here. Judge King wants to hear it. Go ahead. Well, again, we go back to the ERISA requirements, really as set forth in the Department of Labor Regulations found in the CFRs that I've cited to the court. Providing the specific required contents of an SPD, which is really what we're talking about at this moment right now, is that for each benefit, the eligibility exclusionary provisions must be specified in the SPD to provide notice. Yeah, but that isn't okay. That's what I'm trying to get at. I see in my head a difference between a statement that you cannot be a qualified defendant if you are an active duty member of the service, okay? You just cannot ever, no way, no how be a qualified dependent. You have to be a qualified dependent to get the supplemental life. You would agree with that, okay? Right? And you can't be a qualified dependent, they say, and this is the exclusion they relied on, because he's in active duty. Now, what was in the summary plan description that your client did get is it says a loss is not covered if it results from an accident occurring while serving on full-time active duty. I am saying that sounds different because that relates to a specific cause of death versus a status as a person. I agree. Okay. Yeah. And so does that explain why you keep saying you didn't get notice and they keep saying she did? No, I think that there's a difference, although I do agree, Your Honor, with your assessment. One is a cause for being eligible to receive, use the word eligible, perhaps that's not the best, a cause that would allow you to qualify for accidental death benefits or disqualify versus an eligibility, pure status situation, which is what we find ourselves here. The problem that we find ourselves in or the difference that we have is they want to extend the SPD to include this enrollment kit that they contend was provided to my client presumably on the same day, although different mailing if you accept the declaration that's in the record. And the position that we've taken is, number one, the documents that were submitted by my client before she ever met me, before she ever walked into a lawyer's office, were that the documents that she got as part of her enrollment package are different than the actual documents that my opponents have suggested to this court and filed into the record in the district court as to what she received. We're here on a summary judgment. Counsel, does that difference have anything to do with the language of the exclusion? I know the question is whether the enrollment kit was part of what was sent along with the SPD, but the language and what you have, is there any argument here that what she has in her possession that could be used as evidence has a different exclusion in it than what they have provided as an SPD? Absolutely, because there's no evidence here, a summary judgment, as to what my client they contend received to put her on notice of this active duty status exclusion. What you're getting on is maybe you're getting into something else. You're saying that the documents she received are different than what opposing counsel is providing to us as what she received. Does that difference have anything to do with the language about being on active duty? Absolutely, because whether we're dealing with ERISA or whether we're dealing with Georgia or Louisiana state law, it is not my client's duty. It is the defendant's responsibility and requirement to put my client on notice of any exclusions or eligibility exclusions that they are going to rely on in denying the claim. There is no evidence in the record competent for purposes of summary judgment to support what they sent to her to put her on notice. What we do know, Your Honor, from the administrative record is she has testified over and over again. Acknowledged by the prudential claims people, she received no documents that she was on notice of this exclusion. If they're now contending here, as was first raised in the reply memorandum, that they included this enrollment kit as part of the stuff that they mailed to her, and that's where we can go find her notice of this exclusion. Well, Judge, as I submit, they have not come forward at summary judgment with sufficient evidence to support that they sent her that or anything else. But doesn't she acknowledge that she received the SPD? Yes, and the SPD is silent as to the eligibility active-duty exclusion. Well, it doesn't have the language about not being qualified, but it has on page 731, the language you know better than I do, about an accident for somebody who's been on active duty for more than 30 days. Right, and that deal— And shows she would have received that. Excuse me? So she would have received that. It is—I've never suggested she did not receive the SPD itself, which is a different document than the enrollment kit. Okay, so that gets back to my question, which I don't feel has been answered. Is that different? In other words, the language that Judge Southwick referenced on Record 731 that your client did get, which says a loss is not covered if it results from an accident occurring while serving on full active duty, is that different from R1053, their denial that is based on your spouse or domestic partner is not your qualified dependent while on active duty in the armed forces of any country? Are those two different? Yes, they're different for two reasons. One, because the group life insurance is just if you die, you get a benefit if you're eligible. Accidental death, as we all know, has a requirement that it be caused by an accident. And the cases are legion as to where an accident is or is not to have occurred. That provision deals with a separate benefit identifying when an accident will not be deemed to apply if being in active duty within the 30 days. And I apologize, I don't know the quote offhand for that section. Versus where I am and what we're dealing with right now, which is a basic group life insurance policy. You die, you get benefits as long as you're eligible. And it's the eligibility for that basic life insurance that we're talking about in those issues right here, which is different than the accidental death component that Your Honor is citing. Okay, I don't think I'm citing an accidental death component, but my wonderful iPad is not wanting me to find that out. So we'll get there eventually. But 731, I thought, is just a general list of exclusions. Okay. It just says, what is not covered by your A, D, and D benefits? I think I can shed some light where perhaps there's a little darkness right now. One of the few documents I brought up here was from the SPD. And if you go back to starting on page 730 of the Record on Appeal, it starts off with accidental death. Oh, I see what you're saying. You're saying that you've got life insurance and then you've got this extra accidental death. And that's what 731 deals with, the extra accidental death. And you're not asking, she's not asking for that. I don't believe it was covered for that. I don't believe there were any extra money for the A, D, and D policy benefit. And I see that I'm out of time. But I think that if you were to look in the context starting on page 730. But so basic, okay, okay, I get it. So you're saying you've got life and then you've got the accidental death. The accidental death doesn't cover the while serving, yada, yada. But she's not making that claim. He wasn't covered under that. She's just making the basic life claim. He lived, he died, and that's it. As long as you're eligible. Right. And so then that takes us back to the qualified dependent, which was not advised to her. She was not told that status, regardless of whether it causes the death or not, but just status disqualifies you. It's not in the SBD credential. Okay, okay. I think finally, I think I caught it after 15 minutes of arguing. Thank you. I'll save the rest of it. Okay, please, the court. I represent Ian Morrison. I represent the Prudential Insurance Company of America. I'm dividing my time with UPS's counsel. And I want to spend my time mainly focused on two issues, preemption and the reasonableness of Prudential's decision. But before I get there, I really want to respond to what was discussed initially when plaintiff's counsel was up here. The case that was pleaded here was a claim for benefits under the plan. The claim presented in the complaint, the ERISA claim, was under Section 1132A1B, which says that a participant or beneficiary may sue to receive benefits due to them under the terms of the plan. The Supreme Court in the Cigna v. Amara case said that that means you can only sue for what is provided under the terms of the plan. The court then went on to say on the facts of that case, which involved essentially an intentional misrepresentation of the nature of benefits by the employer, that there might be avenues for recovery under a different section of ERISA, Section 1132A3, which allows for appropriate equitable relief to remedy a violation of the plan or a violation of the statute. A claim under Section 1132A3 was never alleged in this case. But he's saying that he has made a claim and proved that there was a person who lived and who died. You all are relying on an exclusion, and therefore the burden's on you, and that when you proffer this exclusion, then he can say you never notified us of that exclusion, so you can't rely on that exclusion, so he's still suing within the rubric of the plan. What's your response to that? My response is that the Cigna case spelled out the answer to that. In the Cigna case, the plaintiffs alleged Cigna lied to us about the benefits, not just failed to disclose. Out and out lied and said the benefits were way better than they really were. Case gets to the Supreme Court, and the Supreme Court says you are relying on statements outside of the four corners of the plan document, which here, the plan document includes the certificate of insurance, which everybody agrees includes the exclusion. Supreme Court, in the Cigna case, said the four corners of the plan document define what benefits you get and what you can recover under Section 1132A1B. That's the only claim that was presented. So he's got a good claim that he didn't bring, is what you're saying? He did not bring this claim, and he didn't even bring it under state law. The state law claims in the original complaint all related to the asserted invalidity of the exclusion itself, asserting that it violated Louisiana law, which led to the whole discussion about whether or not the war in Afghanistan was an undeclared war or not, whether it violated the Louisiana Military Service Relief Act, which the court dismissed. The complaint was amended to assert another claim under Louisiana law, asserting that the exclusion was invalid. Never was there a notice claim pleaded in either the original complaint or the new complaint. So you're saying that's new here? It's new. It came into the case in the summary judgment motion. There was an argument about notice made by plaintiffs in the summary judgment motion, and you cannot amend your pleadings to bring in a new claim in a summary judgment motion, and you certainly can't continue to amend them on appeal. Well, how did you respond to it? I mean, if the issue is joined in summary judgment without amendment of the pleading, the defense responds to it. Did you respond to it, and did you engage in that particular issue at summary judgment? We responded to those arguments as they were presented and demonstrated that they were wrong. I mean, the argument that was made there was an argument that we had violated Louisiana law in terms of giving notice, providing a copy of the certificate, and the response to that is the one that we've made in our brief on appeal, that that law is preempted by ERISA. Well, did you argue that that particular issue went beyond the pleadings? I don't recall offhand whether that was an argument we made on the brief. We certainly made that in our brief on appeal. Am I right that the basic problem here is that the life of this decedent was never insured to begin with? Am I right about that? If it is correct that he was always in the military on active duty during that time. She paid for the insurance, but he wasn't. He wasn't covered. She didn't get any. Right. That's it. Right. And so where is that failure? Failure within Prudential in issuing this policy or this rider or whatever it is? Well, this gets to a point that plaintiff has raised relating to some of the correspondence in the claim file, but the insurance here was a group insurance contract with UPS. UPS managed the enrollment. They actually had a couple of vendors who were involved. There was a vendor who mailed out paperwork. There was a vendor who kept records around Hewitt. And evidently, according to what's in the record, there isn't a verification done to determine whether somebody is otherwise disqualified when someone tries to sign them up as a dependent. There was a couple of months here. If we believe the materials the plaintiff submitted, she enrolled for Mr. Singletary's coverage, and I believe about August, and he was killed in the motorcycle crash in October. So we're talking about a two-month period of time. And coincidentally, I mean, it's not directly part of the case here, but there's an assertion here that somehow this is unfair, that he would have been covered as an active-duty service member under a policy actually issued by Prudential because it insures the service member's insurance, and so it becomes sort of circular. These are things that would come into the record potentially on the claim that was not pleaded, the Section 502A3 or 1132A3. He was insured through her or separately? He would have been insured separately. Okay, well, you don't have to know. I mean, people get to buy more than one life insurance policy and often do when somebody's a provider and they're worried about that, and you can get it through your employer fairly cheaply and all of that, and she thought she had that. So far as I can tell, you've kept premiums you're not entitled to. And even in cases that we have where somebody's misrepresented their entitlement to insurance on their application and therefore voids the policy, the insurance company has to tender the premiums back. So that's even when somebody's committed fraud to get insurance they're not entitled to, which is no allegation of that here. And yet you've kept the premiums, but you're saying, nah, nah, nah, you don't get this coverage. I don't understand how you can do that. Well, I think the answer, Judge, relates back to what I said earlier about the nature of the claim that was brought. Plaintiff may very well have a plausible claim under a different provision of the statute that was not brought, not litigated, and not properly in front of the court on appeal. What we're limited to in the case of the claim that was brought is whether or not Mr. Singletary, there was any death benefit owed as to his death. Under the terms of the plan, there was not. Well, there's a lot to discuss here, and my colleagues may be interested, but you apparently were planning to address preemption. Yes. Could you do that? Sure. I certainly could. So the notice provisions of the state law that have been cited by the plaintiff, either Louisiana or Georgia law, require delivery of a certificate of insurance to an insured. There's a separate question about whether they even apply in this case. Mr. McDonnell will address that. But the Supreme Court's test for preemption as to law as they relate to insurance is set forth in the Miller case, Kentucky Health Plans v. Miller. And there's two elements. One, does the law relate to or apply specifically to businesses in the insurance industry? We will concede that point for purposes of this discussion as to these delivery requirements. And then does it go to the risk pooling as between the insured and the insurance company? And in that instance, the answer is no, it does not. We would cite the North Cyprus Medical Center case from this court, which addressed the question of whether or not prompt pay statutes under Texas law went to risk pooling, and the court said that they did not. They don't affect the nature of the bargain as to what is insured and how much will be paid. This is a procedural requirement. And the Supreme Court actually recently issued a decision, and we'll submit a supplemental authority on this, the Gobey decision that came out in March, where the court again reinforced that ERISA preempts state laws that go to poor ERISA functions. And here, the delivery of a certificate requirement under state law goes to a poor ERISA function of disclosure. The parties have briefed and heard about the ERISA requirements for the summary plan description. But ERISA does require notice of this, and so this is not an inconsistent state law. It's a consistent state law. So then what do you allege? Putting aside your argument that it's not in the pleadings, I understand that argument. Putting that aside for the moment, what is your response to the gap filler argument that we can look to state law to understand and give flesh to this notion of notice? Well, I think, again, the Supreme Court's most recent word on this in the Gobey case would go to that point because the argument was made there that the Vermont law was not imposing any additional requirement that ERISA didn't already require in terms of collecting data about or reporting data about plan expenses. And the Supreme Court said, look, ERISA is intended to impose a uniform federal standard for ERISA plans. UPS has employees all over the country. It should have one standard that governs how it manages the plan. And it's no argument that the state statute in one state happens to more or less coincide. Yeah, but that's not what he's saying. He's saying because we don't have any law explaining this notice requirement under federal ERISA statute, we can look to state law to provide persuasive authority, if you will, to kind of fill in the gap of how does this notice provision have any teeth. Maybe I'm misstating his argument. That's how I heard it. Well, and ERISA, I would respectfully say ERISA does address that issue in Section 1024 of the statute, addresses the delivery of summary plan description in their regulations which have been cited, and those are the requirements. And if they were violated, plaintiff may have a claim, but it wasn't ever brought. Okay. And I see that I'm out of time. I want to save some time for my colleague, Mr. McDonald. He'll give his full ten minutes. Good morning, Your Honors. Thank you for having us. My name is Tim McDonald. I'm representing UPS Flexible Benefit Plan and UPS. Mr. Morrison's argument generally addressed one of the two counts that's left in this case, Count 1, the ERISA benefit count. So I'm going to focus primarily on Count 4, the other count on appeal. That's the count for violation of Louisiana's insurance code. Let me ask you a rather maybe not fundamental but definitional question. Who is the plan administrator on this plan? The plan administrator overall is UPS. They have delegated the final decision-making authority with respect to this benefit to Prudential. Does that make them a claims administrator or are they a title? I'm looking at what the briefing has said as well as what has been said already on this. So what title goes to Prudential? Plan administrator, claims administrator? You might call them a claims administrator. There can only be one plan administrator. There can only be one overall plan administrator. Proceed. Thank you. This is so important on Count 4. Judge Feldman was presented with one claim and it was not a notice claim. He never heard a thing that you heard today. Why? Count 4 was dismissed on the pleadings. It was dismissed before summary judgment. And this court has said you cannot amend your pleadings through briefs. You have to amend. And in fact, there's no issue here that Judge Feldman was at all stingy. Count 4 itself was an amendment. And Count 4 is very, very straightforward. You can find it in the record at 297 to 299. It's seven paragraphs. It never mentions notice. Never. It mentions the following. That the term, the active duty exclusion, is illegal in Louisiana. We disagree. That's what it alleges. That's paragraph 4 on page 298 of the record. There's only three paragraphs after that, and when they ask for the relief, they ask for the relief that that provision be declared invalid because of Louisiana law. Okay, so if we take the notice question that I spent so much time on with your counsel opposite out of the case, what's left? What's left is did the decision by Prudential match with the terms of the plan? And there's no dispute that in the contract of insurance, which is the plan document, there is the active duty exclusion. And then the issue is, is the term illegal under Louisiana law? Well, first, the contract says Georgia law applies. They've never pled a Georgia law claim. So you don't ever get to the issue of whether Louisiana law would vindicate that provision. But let's even go beyond that. Let's give them the benefit of the doubt. I mean, as you know, when we brief, we never know which argument you're going to like and which argument you're not. And we always want to say. We don't either. Here's the first one. Here's the second one. Here's our backup. If we go to Louisiana, there are two first two subsections in the provision that they talk about. We have to decide if Afghanistan is a war or not. Excuse me. Is this where we have to decide if there's a war in Afghanistan? I don't think so. I think the president has because the president stated as late as 2014 in a statement that we've cited in the briefs that there was a war going on in 2012 and 2013. But we're at the pleadings, Your Honor. We're at the pleadings. They didn't plead that that wasn't happening. They just said that provision is illegal. You can't have it. And we say, wait a minute. If you look at the Louisiana Code, there are two different provisions. They say it's illegal because he didn't die. But they don't have to plead an exception to an exclusion in their complaint. So if they're saying that this is an invalid exclusion under Louisiana law, and let's for the moment argue that Louisiana law applies, and then you say, well, there is a war in Afghanistan. Why do they have to plead there's not a war in Afghanistan? That sounds like a fact issue. Maybe it's not a fact issue. It's resolved by reading what the president says or whatever. I don't know. But it doesn't sound like something that has to be pled. You say there is a war in Afghanistan. I don't know that they have to plead there's not. That doesn't make any sense to me. Well, but the provision says that you can have one in a period of war declared or undeclared. So in other words, to— Okay, but then we get into that whole mess. I don't know that that's a pleading problem. Even before that, the record is absolutely clear. And they pled the existence of the policy in paragraph one of count four on page 297 of the record. So this court's precedent say the group policy is part of the pleading. And that pleading says Georgia law applies. It's delivered in Georgia. And on both pages one and two of the policy, right up front, it says the governing jurisdiction is Georgia. So you don't even have a Georgia law claim here. And you don't have an ERISA claim about whether or not the provision is good. You have an ERISA claim, as Mr. Morrison has very aptly described, for the benefit. Do I qualify under the plan, not the SPD, the plan, which is what Signa and Amara emphasized, or not? And then count four is, well, if I don't win under the plan, there was something illegal under Louisiana law. And our point is at the pleading stage, you can't use summary judgment evidence at the pleading stage. At the pleading stage, it's Louisiana law is pled. It doesn't apply. And the square terms of Louisiana law permit the provision that is in the plan. They want to argue that there has to be a causal relationship between the death and the active duty. We agree he died racing a motorcycle while on active duty but not doing military chores. He died on a street outside the base. That is on active duty. There's a report of casualty in the administrative record for purposes of Mr. Morrison's claim, the benefit claim. The report of casualty only comes in on count one if he's part of the military, if he's on active duty. I'm not on active duty. If I die today, the military is not going to issue a report of casualty. So that answers the question for Mr. Morrison's claim under count one. What I'm discussing under count four, we never get there. Because you don't have an aristocrat. I'm sorry, Your Honor. Let me ask just one question, okay? You get to ask as many as you want. Where in the material that was given to Ms. Singletary was she told that because your husband is on active duty, we don't insure him? Where was she told that? I'm going to answer that question, and then I'm going to make an argument about why that question is not relevant to this case. But I'm going to answer your question first. If you look at the record on appeal, 727, it specifically, under the supplemental life for dependents, it refers you back to the group contract. And she is entitled to get a copy of the group contract for free. But she didn't. She may not have. We don't know, because it's a proven claim. She bought insurance that she never really got, okay? She paid $9 for two months' worth of insurance. Well, I know. So it's arguably de minimis, except her husband's dead. We're not at all. But your answer is she could have gotten the information that would show that she wasn't getting any insurance, but she didn't ask for it. And there's case law that says that you can incorporate other documents in an SPD. First of all, the Fifth Circuit has said it's almost the 25th year anniversary. I don't want to argue with you. I just wanted to know what happened here. We're talking about the summary plan description. The summary plan description probably did not say you can't insure an active duty person. It didn't say that. For that provision, for that reference, it asks you to go back to the contract to see the exclusions under that particular policy. I'm not talking about language at the end, but I'm saying for that particular benefit, it says see this other document. There's a western district. I realize I'm not binding on this case, but out of this circuit, western district of Louisiana case called Murphy v. Washington Oil, where they said you can incorporate. That's fine. As long as you say that, you can incorporate. Now let me ask you one more question. Sure. When she sent in her application for this, did she disclose that her husband was working for the Army? We have no record of that, to my knowledge, until the claim was brought. And if I could address So when the claim was brought, you say you had no record. Oh, you mean her application did not reveal on its face that he was an Army employee. Right, and there was a key document that they referred to about the application not having certain information. Let me hold up the document he's referring to. It's 1006 in the record. This document doesn't even list Mr. Singletary as a dependent. Please look at it. That's what they cite. So whatever this was, maybe it was a draft. Maybe she was thinking about what she was going to do. But their document lists Linda Singletary and Clinton R. Singletary, child. It doesn't list. The smoking gun document he talks about doesn't even list the husband. So we're now I'm sorry, my red light is on. May I sum up? You got 30 seconds. We're now past the pleadings into a document from another claim that doesn't even say what they say it says. Count four, Judge Feldman got it right. He let them amend to add count four. They didn't ask to amend to state an ERISA claim relating to the SPD. It's not in the case. And they didn't ask for Georgia claim. And this court has repeatedly said, if you don't ask for it below, you can't ask for it here. Judge Feldman's decision should be affirmed. Thank you. Thank you. Last point first, please. Absolutely. In the administrative record, it's in either late July, early August. Timothy Singletary. The decedent is identified as the spouse. He is covered. I don't have the entire record here. It is there. I don't know what document is referring to. I looked at it yesterday. It is absolutely there. Setting aside state law, ERISA law, what I hear all the time and what I plead all of the time is we go to the plan. The plan in this particular case is the group policy, their certificate. What does the plan say? They must provide a copy of that document to the employee. But you didn't plead that they didn't. So how can we grant you relief on a claim you didn't make? I did make the claim, and I need to address that. Tell me the record side. First of all, I pleaded, number one, as I started off my argument, this is a claim for benefits under the terms of the plan. I have no equitable claim when I am making a claim for a money judgment, which is exactly what I'm doing here. I am asking for money under this supplemental group policy for the insurance benefits insuring Mr. Singletary. In my complaint, and I cited this in the brief, to the extent that I need to have some other equitable relief to accomplish my claim for benefits, which is what this claim is, I have pleaded that. It is in my prayer for relief. In your prayer for relief? In my prayer for relief. Of your original complaint? Of my original complaint and in my supplemental complaint. It is there, and I've cited the record side. It's in my brief, in my reply brief. I respond to the argument raised by Applebee's in their briefs. It is there. Okay, so, I mean, the prayer is Linda Singletary respectfully prays that her complaint be deemed good and sufficient, she may be summoned, they appear and answer, and that after all due and legal proceedings are had herein, that there be judgment entered in favor of plaintiff and against the defendants jointly, severally, and in solito for all benefits, liquidated damages, penalties, attorney's fees, cost of interest, and for all general and equitable relief. So that equitable relief there, that's what you're relying on. Because I am not. That one word. Because I am not bringing an equitable relief claim because it doesn't exist for the type of claim that I'm bringing here. It is not for, as the Unum v. Ward case and all the other cases that have gone up to the Supremes in the past 20 years. This is a claim for money judgment under 1132A1B. You say you've pled what you need to plead to get where you need to go. But the problem is the document that you rely on says he ain't a qualified dependent if he's active-duty military, which he was. What this court and other courts have talked about in the sense of the automatic notice requirements that the plan has to comply with to notify its insurers or beneficiaries of the eligibility requirements for the coverage that they're paying for. That's where I go. They're trying to – it's a classic shift the burden argument. They're trying to blame my client for not asking for documents that ERISA requires them to provide. Let's jump to step two. So you're saying it's an element of their pleading to prove that if they're relying on an exclusion from eligibility that they gave notice of it? It is because they're arguing that my client had notice of an exclusion or an eligibility requirement that she did not. And she did not based on the evidence that's in the administrative record. Literally from the filing of this document. And what is your support for the argument that it's their pleading burden, not yours? I don't think it's – they want to spend a lot of time on what was pleaded or whatnot. These issues have been front and center in the district court. Well, I mean what was pleaded and whatnot matters. It just does. Of course it does, Your Honor. And so you can – Rule 15, you can liberally amend with permission, yada, yada, but it matters. So to me, it does matter whose burden it is because if it wasn't your burden, you didn't have to plead it. But if it was your burden, you didn't plead it, then this really interesting notice question that I'm super interested in may not matter a flip. My burden as a plaintiff making a claim under an insurance policy to prove that I'm entitled to benefits under that policy. The defendants always have the burden of proving an exclusion to a claim for benefits under a policy. So to the extent that they're claiming I was on notice or my client was on notice, that would have been something the defendants needed to raise. I'm not going to plead my own exclusion in a claim for benefits. I've pleaded that she fit under the definition that she was entitled to it. She paid for it and thought she had it and was never told otherwise. That is the undisputed evidence in the administrative record from day one, acknowledged by Prudential's own claims employees. Wow, how are we going to enforce this? It's not in the SPD. The first two, three, four, five pages of the administrative record is an email exchange that's particularly pointed. They acknowledge it's nowhere to be found, and at the end of the day, they say, well, it's in the certificate, which she never got. That's the reason that they enforced it. All right, counsel. Appreciate the.